Chief Judge Fuld.
The parties in this litigation are not strangers to our court. In July, 1964, we affirmed a libel judgment for $46,500 in favor of the plaintiff against the defendant, Congressman Adam Clayton Powell (14 N Y 2d 881; see, also, 18 N Y 2d 931). And now we are called upon to review an award of damages to the plaintiff against the defendant and his wife, Yvette Powell, based upon.the charge that they had transferred real property owned by them in order to frustrate collection of the original libel judgment.
That judgment was entered in the office of the Clerk of the County of New York on April 5, 1963, and execution was duly issued on the same day, to be returned wholly unsatisfied two months later.[1] On April 17, 1963, Yvette Powell, “ acting in her own capacity and as the holder of power of attorney from her * * # husband ”, transferred certain real estate which they owed in Puerto Rico to her uncle and aunt, Gonzalo and Carmen Diago. The documents on file in the Registry of Property at Bayamon, Puerto Rico, recite that, as consideration for the conveyance, the Diagos gave the defendants $1,500 in cash and a purchase-money mortgage of about $38,000 and also cancelled a debt -of some $10,000 allegedly owing to the Diagos from the defendants “ on account of expenses * * * incurred in the construction of the residence which has been installed on the property ”. The Diagos simultaneously placed two additional mortgages “ in favor of the Bearer ” aggregating $25,000, which ‘ ‘ bearer ’ ’ mortgages are now in the hands of unknown persons. The conveyance and mortgages did not come to the plaintiff’s attention until December, 1963, and all efforts to examine the defendants with respect to them have been to no avail. The plaintiff never docketed the libel judgment in Puerto Rico nor, -since she could find no property listed in Powell’s name in Puerto Rico, did she institute any proceedings for the purpose of levying execution there.
Instead, she sued the defendants and the Diagos in New York for $1,000,000 damages, characterized as both compensatory and punitive, alleging as a cause of action against the Powells that *255 the conveyance of the Puerto Rican property was made without consideration and with intent to defraud the plaintiff by preventing the collection of her judgment.[2]
The Powells moved, under CPLR 3211 (subd. [a]), to dismiss, the complaint on two grounds, one that the court lacked jurisdiction of the subject matter of the cause of action (par. 2) and the other that the pleading failed to state a cause of action (par. 7). The court at Special Term denied the motion and on appeal the Appellate Division, two justices dissenting, affirmed the resulting order. The Appellate Division divided on the question whether, under the law of this State, a judgment creditor, having no lien on specific property, has a right of action for damages against his judgment debtor or others for transferring the debtor’s property "with intent to defraud the creditor and prevent collection of his judgment (25 A D 2d 1).
While that appeal was pending in the Appellate Division, the defendants failed to appear, in response to a court order, to be examined before trial and have their depositions taken. In consequence of that default, an order was made, pursuant to CPLR 3126 (subd. 3), striking the answers interposed by them and directing an inquest to fix the amount of the plaintiff’s damages. Counsel for the defendants appeared at the inquest where they again challenged the sufficiency of the complaint and urged that, in any event, there could be no recovery of any punitive damages.. A Supreme Court Justice, sitting without a jury, awarded the plaintiff compensatory damages against both defendants in the sum of $75,000, inclusive of the costs of the litigation and attorney’s fees, plus punitive damages in the amount of $500,000 against the defendant Powell and in the sum of $25,000 against Mrs. Powell. The Appellate Division, on appeal, unanimously affirmed the order striking the defendants’ answers but modified the final judgment by reducing the award of compensatory damages against both defendants to slightly less than $56,000 and the award of punitive damages against Powell to $100,000 and by entirely eliminating the punitive damages assessed against his wife.
*256 The defendants have taken two appeals to this court: one from the affirmance of the order striking their answers and directing the inquest and the other from the final determination of the Appellate Division affirming, as modified, the trial court’s judgment awarding damages against them on that inquest. On the latter appeal, there is brought up for review (under CPLR 5501, subd. [a], par. 1) the intermediate order denying the defendants’ motion to dismiss the complaint and the questions relating to the award of damages on the inquest.[3]
The parties have assumed that the substantive law of New York is completely dispositive of the appeal, and the courts below have in fact decided the case under such law. In .so doing, they have overlooked the applicable choice of law principle which establishes that the legal consequences of the defendants’ acts in this case must be determined under the law of Puerto Rico. The rule is that the validity of a conveyance of a property mter- ; est is governed by the law of the place where the property is j_located. (See Wyatt v. Fulrath, 16 N Y 2d 169; Hutchison v. Ross, 262 N. Y. 381; Davis v. Hudson Trust Co., 28 F. 2d 740, 744, cert. den. 278 U. S. 655; Marcus v. Kane, 18 F. 2d 722; see, also, Restatement, Second, Conflict of Laws, Tent. Draft No. 5 [1959], *257 § 218; Restatement of the Law, Conflict of Laws [1934], § 218, comment f; Annot., Ill ALR 787; cf. Uniform Commercial Code, § 9-103, snbd. [3].) Recently, in the Wyatt case (16 N Y 2d 169, V supra), we applied the law of the situs to determine whether the Spanish heirs of a Spanish domiciliary were defrauded by Ms testamentary transfers of chattels through joint bank accounts maintained in New York and London. The same choice of law rule is equally applicable here. __
Whatever right the plaintiff had to levy execution on the land in question necessarily arose solely under the law of Puerto Rico, the jurisdiction empowered to deal with the res. Manifestly, if Puerto Rico regarded the property, when it was owned by the defendants, as not being subject to execution or attachment, the plaintiff could not be heard to complain about the conveyance, regardless of the defendants’ motives. The plaintiff would likewise have no cause for complaint if, under the law of Puerto Rico, the land was subject to execution by her prior to the conveyance to the Diagos and remained subject thereto even after such transfer.
Assuming that the plaintiff did initially have a right to proceed against the land and that, by reason of the conveyance, her right was frustrated, impaired or made more costly to enforce, her remedy, if any, must arise under the law of Puerto Rico. Such remedy is a concomitant of the right itself; it simply represents an alternate means for satisfying a judgment when the judgment creditor has been blocked or checked in Ms efforts to reach the land. We should, as a general rule, afford the plaintiff no greater or lesser remedy than she is given under the law creating the right wMch the remedy is designed to safeguard. v
To put the matter somewhat differently, the law of New York, does not and cannot determine the extent to which property located outside the State is subject to execution by a judgment creditor. Therefore, whether or not the plaintiff was defrauded j by the conveyance to the Diagos may not be resolved under o.ur own rules. We do, of course, have an interest in assuring that a ( New York judgment creditor is not prevented by wrongful acts 1 of Ms debtor from satisfying the judgment. To the extent that \ satisfaction must come from execution on the debtor’s assets in a *258 foreign jurisdiction, this State may legitimately demand that there he no arbitrary discrimination by that jurisdiction against New York judgment creditors as compared with local judgment creditors. (See Watkins v. Conway, 385 U. S. 188.) However, assuming that no such discrimination is practiced by Puerto Rico, then, the availability of a remedy to a judgment creditor who has been prevented from levying execution by a transfer of land located in that jurisdiction constitutes a matter of policy which is properly determinable by the law of Puerto Rico rather than that of New York. (See Wyatt v. Fulrath, 16 N Y 2d 169, 175, supra; cf. Oltarsh v. Aetna Ins. Co., 15 N Y 2d 111; Intercontinental Hotels Corp. v. Golden, 15 N Y 2d 9.)
In this regard, we note that the Restatement Second of Conflict of Laws (Tent. Draft No. 5 [1959], § 218; see, also, Restatement, Conflict of Laws [1934], § 218, Comment f) provides for the ‘ ‘ validity of a conveyance ’ ’ of land to be “ determined by the law of the state where the land is.” More specifically, in their Comment to this provision — under the heading “ Conveyance in fraud of third persons ”•—the authors of the Restatement declare (Comment b, p. 23): “ The law of the state where the land is determines whether the conveyance was made in fraud of third persons. This law therefore determines whether a conveyance, valid between the parties to it, is either void or voidable with respect to others because made, for example, in fraud of creditors ’ Although considerable has happened in the field of conflict of laws since 1959 when the Comment was written, we believe that it still reflects the best and most pragmatic view of how to deal with a case stemming from an alleged fraudulent conveyance of real property located in a foreign ' jurisdiction. It would be unrealistic to give the plaintiff a cause of action for fraud against his debtor and others on the basis of i their having made a conveyance of property in Puerto Rico if 1 what -they did was perfectly valid under the law of that jurisdiction.
Cautioning against parochialism in selecting the proper choice of law rule, we recently observed that our courts “ should accord [to foreign law] the recognition which comity between enlightJ ened governments requires.” (Matter of Utassi, 15 N Y 2d 436, *259 442.) The present case is a most appropriate one for application of that sound jurisprudential principle.[4]
We are required to “ take judicial notice without request ” of the law of “ every state, territory, and jurisdiction of the United States ” (CPLR 4511, subd. [a]) —and Puerto Rico would seem to fall within this category. However, the parties, ignoring the choice of law problem, have not argued or briefed the applicable Puerto Rican law and, what is more, several sources of Puerto Rican law—such as recent decisions of the Supreme Court of Puerto Rico — seem to be presently available only in Spanish. Under the circumstances, we would afford the parties an opportunity to address themselves to such law by remitting the case to the Supreme Court with directions to reopen the inquest and ascertain the pertinent Puerto Rican law and to reconsider, in the light of that law, the questions as to the sufficiency of the complaint and the amount of compensatory damages, if any, to which the plaintiff may be entitled under such foreign law. (See Wyatt v. Fulrath, 16 N Y 2d 169, 175, supra.)
One point remains—whether the courts below were empowered to make an award of punitive damages against the defendant Powell.[5] Although it is clear that the measure of compensatory damages is determined by the same law under which the cause of action arises (see Long v. Pan Amer. World Airways, 16 N Y 2d 337, 343; Davenport v. Webb, 11 N Y 2d 392), this is not necessarily true with regard to exemplary damages. An award oí' compensatory damages depends upon the existence of wrongdoing—in this case, an issue for resolution under the lex situs of the property alleged to have been fraudulently conveyed. An ■■ award of punitive damages, on the other hand, depends upon the = object or purpose of the wrongdoing and on this issue we should ! look to the ‘ ‘ law of the jurisdiction with the strongest interest in . the resolution of the particular issue presented”. (Babcock v. *260 Jackson, 12 N Y 2d 473, 484; see, e.g., Macey v. Rozbicki, 18 N Y 2d 289; Long v. Pan Amer. World Airways, 16 N Y 2d 337, supra; Dym v. Gordon, 16 N Y 2d 120; Restatement, Second, Conflict of Laws, Tent. Draft No. 9 [1964], § 390b, Comment c.) On the assumption that the conveyance was invalid, the particular wrong í which would serve as a predicate for punitive damages would be '■ the attempt to frustrate satisfaction of a New York judgment. It cannot be disputed that New York has the “ strongest interest ” in the protection of its judgment creditors and, accordingly, New York law should govern as to whether the judgment debtor’s conduct in the case before us—if it should prove . wrongful under Puerto Bican law—was such as to warrant an !v award of punitive damages.
( We do not believe that this case involves the type of behavior / for which punitive damages are available or may be justified. In Walker v. Sheldon (10 N Y 2d 401, 404-405), after noting that “ ‘ It is not the form of the action that gives the right to the jury to give punitory damages, but the moral culpability of the defendant ’”, we declared that, although such damages “ have been refused in the ‘ ordinary ’ fraud and deceit case * * *, we are persuaded that, on the basis of analogy, reason and principle, there may be a recovery of exemplary damages in fraud and deceit actions where the fraud, aimed at the public generally, is gross and involves high moral culpability.” The fraud here asserted — aimed at removing a judgment debtor’s property from the reach of an execution — does not fall within that category. Furthermore, effective remedies are provided against fraudulent conveyances, including the assessment against the tort-feasors, in appropriate cases, of the costs incurred in pursuing such remedies, and there is no need to offer the prospect of punitive damages as an inducement to institute suit. (See Walker v. Sheldon, 10 N Y 2d 401, 404, supra.) In short, the defendant Powell may have committed a wrongful act but his conduct was not so “ gross and wanton ” as to bring it within the class of malfeasances for which punitive damages may be awarded. (Walker v. Sheldon, 10 N Y 2d 401, 406, supra.)
In point of fact, the record yields the impression that the courts below were impelled to award punitive damages against the defendant Powell—$500,000 by the trial court, reduced to $100,000 by the Appellate Division—because of his many cita *261 tions for contempt of court (see, e.g., James v. Powell, 18 N Y 2d 931, supra) rather than because of his act in conveying this property in Puerto Rico. Our statutes provide sanctions for contumacious conduct and, if those provisions are ineffective or inadequate, the matter should be made known to the Legislature. It is not proper for the courts, under the guise of awarding damages on account of a fraudulent transfer, to punish the defendant for other wrongful conduct not connected with such transfer.
To recapitulate — the Appellate Division erred in awarding compensatory damages under the law of New York, since the ; applicable law on that issue is that of Puerto Rico. In view of) the fact that the parties have not previously dealt with the law of Puerto Rico, they should be given an opportunity to do so. On the question of punitive damages, however, the law of New York is controlling, and under that law no award of such damages would, in any event, be justified.
The appeal from the affirmance of the order striking the defendants’ answers should be dismissed, without costs, upon the ground that it does not finally determine the action within the meaning of the Constitution.
The order of the Appellate Division modifying the judgment of the Supreme Court should be reversed, without costs, and the matter remitted to the Supreme Court, New York County, for further proceedings in accordance with this opinion.

. While this case was sub judice in our court, the defendant Powell made several payments to the plaintiff and he claims that the original libel judgment has now been fully satisfied.

. A second cause of action against the Powells and the Diagos, alleging a “malicious agreement and conspiracy” to accomplish the same ends, was severed in earlier proceedings and is not before us.

. The appeal from the affirmance of the order striking the defendants’ answers and directing the inquest must he dismissed since the order does not finally determine the action within the meaning of the Constitution (N. Y. Const., art. YI, § 3, subd, b, par. [1]). The other appeal—■ from the order modifying the final judgment — is, however, properly before us, notwithstanding that such judgment was based in part on what was, in effect, a default by the defendants. The provision of CPLR 5511 that an aggrieved party may appeal from an appealable judgment or order “ except one entered upon the default of [such] aggrieved party ” does not bar the defendants in this case since they ask us to review only matters which were the subject of contest below, namely, (1) the sufficiency of the complaint, (2) the measure of compensatory damages and (3) the availability of any punitive damages at all. It is clear under our decisions that, on an appeal from a final determination based in part on a default, review may be had of the proceedings on a contested inquest (see, e.g., McClelland v. Climax Hosiery Mills, 252 N. Y. 347, 353-354) as well as of an intermediate order “ necessarily affecting ” the final determination, such as the one before us, affirming the denial of the defendants’ motion to' dismiss the complaint. (See Sauerbrunn v. Hartford Life Ins. Co., 220 N. Y. 363, 367-368; Kade v. Sanitary Fireproofing Co., 256 N. Y. 371, 374; see, also, Cohen and Karger, Powers of the New York Court of Appeals, pp. 401-403; 7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5511.11.)

. Of course, if, in exploring the law of Puerto Rico, it were to tie found that it was specifically designed to thwart the public policy of other states — for example, by denying a remedy to all judgment creditors in the plaintiff’s circumstances in order to attract foreign investment in its real estate — the courts of this State would be privileged to apply the law of New York rather than that of Puerto Rico.

. As previously indicated, the Appellate Division eliminated the award of punitive damages against Mrs, Powell.