**Rainer W. KRISTINUS, Plaintiff,**

v.

**H. STERN COM. E IND. S.A.,
Defendant.**

**No. 76 Civ. 1532.**

United States District Court,
S. D. New York.

Jan. 26, 1979.

Farber & Childs, New York City, for plaintiff; John J. Von Der Lieth, New York City, of counsel.

Bloom, Epstein, Wayne, Reiss & Milner, New York City, for defendant; George Reiss, New York City, of counsel.

LASKER, District Judge.

While visiting Rio de Janeiro in December, 1974, Rainer Kristinus, a Pennsylvania resident, purchased three gems from H. Stern Com. E Ind. S.A. (H. Stern) for $30,-467.43. According to Kristinus, a flyer advertising H. Stern's wares had been slipped under the door of his hotel room in Brazil.

The flyer contained the following statement (in English) in red type:

"Every sale carries Stern's one-year guarantee for refund, credit or exchange either here or in your own country. H. Stern Jewelers New York, (681 Fifth Avenue) are at your disposal for help and service."

Kristinus asserts that when he purchased the gems, a vice-president of H. Stern assured him that he would be able to return them for a complete refund in New York.

In January, 1975, Kristinus tendered the gems to H. Stern Jewelers, Inc. in New York City and requested a refund. His request was denied, and this suit for specific performance of the alleged oral promise to refund the purchase price followed.

H. Stern moves to dismiss the complaint on the ground that the alleged oral promise is unenforceable under the laws of Brazil, which H. Stern contends govern the transaction in question.

The provisions of Brazilian law on which H. Stern relies are Articles 141 and 142 of the Brazilian Civil Code, which provide:

"*Article 141.* Except in cases specifically provided for to the contrary, evidence which is solely by testimony is only admitted as to Contracts whose value does not exceed Cr $10.000,00 (ten thousand cruzeiros).

*Sole Paragraph.* Whatever the amount of the Contract, evidence by testimony is admissible as a subsidiary to or complement of evidence in writing.

*Article 142.* There cannot be admitted as witnesses:

\*    \*    \*    \*    \*    \*

*IV.* The person interested in the object of the litigation, as well as the ancestor and the descendant, or collateral relative, through the third degree of one of the parties, whether by blood or by affiliation." [1]

The question presented at this juncture is not whether H. Stern has properly stated Brazilian law, but whether a New York court would apply that law or the law of the state of New York in the circumstances of this case. See *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We conclude that a New York court would apply the law of New York, and accordingly we deny H. Stern's motion to dismiss.

In deciding choice of law questions, the rule in New York is that "the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Miller v. Miller,* 22 N.Y.2d 12, 15–16, 290 N.Y.S.2d 734, 737, 237 N.E.2d 877, 879 (1968), *quoted in Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 382, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576 (1969); *see Rosenthal v. Warren,* 475 F.2d 438, 440–44 (2d Cir. 1973). In short, New York courts balance New York's interest in having New York law apply against a foreign state's interest in having foreign law apply. *Rosenthal v. Warren,* 475 F.2d 438, 444 (1973).

An examination of the provisions of the Brazilian Civil Code on which H. Stern relies suggests that those provisions promote two interests. First, they protect the integrity of the judicial process in Brazil against the taints of perjured and biased testimony, by 1) requiring that testimony regarding a contract be corroborated by written evidence (Article 141), and 2) barring testimony from interested parties (Article 142).[2]

1. H. Stern's expert on Brazilian law states that the statement in the flyer that Kristinus received in Brazil would not "be sufficient under Brazilian law to constitute a written contract or even a writing sufficient to enable plaintiff, or his wife, to testify as to the Contract." Affidavit of Paul Griffith Garland, Exhibit B to Defendant's Notice of Motion, ¶ 4.

2. The Common Law during the seventeenth and eighteenth centuries was to the same effect. 2 J. Wigmore, Evidence § 575 (3d ed. 1940), but during the first half of the nineteenth century the disqualification of interested parties was widely criticized. See, e. g., J. Bentham, Rationale of Judicial Evidence, b. IX, pt. III, c. III (1827), *quoted in* J. Wigmore, *supra,* § 576 at

This interest is not implicated in the present case, since the integrity of the Brazilian judicial process is not threatened in a suit in the United States District Court for the Southern District of New York.

Second, Article 141 protects persons who transact business in Brazil from unfounded contractual claims by requiring that such claims, to be enforceable, be supported by a writing. This interest of Brazil does have a bearing on this case, since presumably Brazil seeks to provide this protection to anyone who transacts business there, regardless of where suit on the transaction is brought. The question, then, is whether this interest is greater than any interest that New York may have in applying its own law (which we assume, for the purposes of this motion, would permit enforcement of the contract alleged by Kristinus) to the transaction involved here.

Although Kristinus is not a New York resident, New York may nonetheless assert an interest on his behalf. *See Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 383, 300 N.Y.S.2d 817, 826, 248 N.E.2d 576 (1969). New York's contacts with this case are 1) that H. Stern transacts business in New York through its franchisee and agent, H. Stern Jewelers, Inc., and 2) that the alleged promise that Kristinus seeks to enforce was to refund the purchase price of the gems in New York through that franchisee. New York has some interest in ensuring that persons who transact business within its borders (and thus subject themselves to some extent at least to the authority of the state) honor obligations, including contracts made elsewhere. Usually, of course, this interest must bow to the paramount interest of the state or country where the contract is made in regulating the conduct of those within its territory. When the contract is to be performed in New York, however, New York's interest is heightened, since its ability to regulate business affairs and the rights and obligations of those within its territory is then directly implicated. In such circumstances, we conclude that a New York court would decline to apply foreign law where, as here, that law would foreclose enforcement of a contract valid under New York law. In short, a New York court would not permit H. Stern of Brazil to contract in Brazil to refund Kristinus' purchase price in New York, and then rely on the laws of Brazil to avoid its obligation under the contract. *See James v. Powell,* 19 N.Y.2d 249, 259 n. 4, 279 N.Y.S.2d 10, 17 n. 4, 225 N.E.2d 741 (1967). Accordingly, New York law should be applied. This is an equitable result, since it simply preserves the dispute between the parties for resolution on the merits.

For the reasons stated, H. Stern's motion to dismiss is denied.

It is so ordered.

687–89. In their First Report (1848), the New York Commissioners on Practice and Pleadings found the rule "altogether unsound," and New York's legislation of the same year abolishing the disqualification "was the direct means by which the reform of testimonial rules spread, within the next decade, to most of the other States." J. Wigmore, *supra,* § 576 at 693. Professor Weinstein commented during a panel discussion at the 1960 Summer Meeting of the New York State Bar Association: "Jeremy Bentham wrote his treatise on evidence and as the result of his exposure of the idiocy of the general rule that a person interested in a claim could not testify on the ground that he might perjure himself, there was a widespread change in that rule and we now have the rule in New York—and we were leaders in adopting it— that a person who is interested in a claim may testify on his own behalf. All of us would be shocked if we went back to the ancient rule." 5 J. Weinstein, H. Korn & A. Miller, New York Civil Practice, ¶ 4519.03 at 45–458 (1974). In light of New York's early disapproval of the disqualification of interested witnesses and views such as those of Professor Weinstein, it is quite possible that a New York court would decline to apply Article 142 of the Brazilian Civil Code as contrary to New York's public policy. *James v. Powell,* 19 N.Y.2d 249, 259 n. 4, 279 N.Y.S.2d 10, 17 n. 4, 225 N.E.2d 741 (1967).