**KEENE CORPORATION, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, et al., Defendants.**

Civ. A. No. 78–1011.

United States District Court, District of Columbia.

Oct. 4, 1984.

Harold D. Murry, Jr., Clifford & Warnke, Eugene Anderson, Jerold Oshinsky, Arthur S. Olick, Anderson, Baker, Kill & Olick, Washington, D.C., for plaintiff.

Dennis M. Flannery, Wilmer, Cutler & Pickering, Washington, D.C., Michael R. Gallagher, Thomas E. Betz, Gallagher, Shrap, Fulton, Norman & Mollison, Cleveland, Ohio, Frank W. Gaines, Jr., Robert L. Hoegle, Olwine, Connelly, Chase, O'Donnell & Weyher, Washington, D.C., Gerald V. Weigle, Jr., Dinsmore, Shohl, Coates & Depree, Cincinnati, Ohio, John F. Mahoney, Jr., James E. Rocap, Stephen L. Nightingale, John P. Arness, William J. Bowman, Hogan & Hartson, Washington, D.C., for defendants.

MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This action is before the Court on three independent motions for partial summary judgment regarding punitive damages brought by defendant Insurance Company of North America ("INA"), defendant Liberty Mutual Insurance Company ("Liberty"), and defendant Aetna Casualty and Surety Company ("Aetna"); defendant Aetna's motion for partial summary judgment regarding plaintiff's claim of misrepresentation; plaintiff Keene Corporation's ("Keene") opposition thereto; defendants' replies; plaintiff's supplemental responses; and the entire record herein. The Court heard oral argument on these motions on June 4, 1984.

In its Third Amended Complaint ("Complaint"), Keene seeks punitive damages in potential excess of $150 million from INA, Liberty, and Aetna.[1] Complaint at ¶¶ 66, 112; Memorandum of INA in Support of its Motion For Summary Judgment as to Keene's Claims for Punitive Damages ("Motion of INA") at 1. Keene bases its claim for punitive damages on defendants' alleged "malicious breach of contract" and "tortious acts arising from defendants' breaches of their contracts and of their express and implied obligations and duties, with respect to the asbestos damage claim lawsuits brought against Keene." Complaint at 1. Defendants contend that under the laws of the applicable jurisdiction punitive damages may not be imposed against them.

The issue of whether punitive damages may lie in this case is governed by two threshold questions. First, which jurisdiction controls the punitive damages issue? Second, does the controlling jurisdiction's rule of law permit courts to impose punitive damages against insurance companies for "bad faith" dealing?

---

1. Keene also seeks punitive damages against a fourth defendant, Hartford Accident & Indemnity Company ("Hartford"). Complaint at ¶ 112.

Hartford, however, did not file a motion for partial summary judgment on this issue.

■ Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1262 (D.C.Cir. 1972), quoting *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213, 216 (8th Cir. 1951).

■ Keene argues exhaustively on the merits of awarding punitive damages against defendants for their "bad faith" conduct in "blatantly switch[ing] to a manifestation interpretation of [their] comprehensive general liability ... insurance policies on a national scale" to "enable [them] to escape [their] recognized enormous potential financial liability for the asbestos lawsuits." Keene's Statement of Points and Authorities in Opposition to Motion of INA for Partial Summary Judgment as to Keene's Claims for Punitive Damages ("Keene Opposition to INA Motion") at 6–7; *see* Keene's Statement of Points and Authorities in Opposition to Motion of Liberty for Summary Judgment as to Counts III, IV and VI of Keene's Third Amended Complaint ("Keene Opposition to Liberty Motion") at 3–14; Keene's Statement of Points and Authorities in Opposition to Motion of Aetna for Summary Judgment as to Count IV and as to Keene's Claims for Punitive Damages in Counts III, IV and VI of Keene's Third Amended Complaint ("Keene Opposition to Aetna Motion") at 7–23. But the issue here is not the propriety of awarding punitive damages for defendants' alleged misconduct. Rather, the issues are choice of law and interpretation of the applicable law regarding Keene's punitive damages claim. The material facts that bear on these issues are not in dispute. Therefore, the punitive damages question is ripe for adjudication and may properly be considered for summary judgment.

The Court finds that Keene is not entitled to punitive damages against defendant INA as a matter of law. Thus, defendant INA's motion for partial summary judgment is granted. The Court defers final judgment on the motions of defendant Liberty and defendant Aetna as to punitive damages until further briefing is received from the parties.

In Count IV of the Complaint, Keene states a cause of action for fraudulent misrepresentation to support in part its claim for punitive damages against defendants. The cause of action is based on defendants' representations as to the extent of coverage of Keene's insurance policies. Keene seeks compensatory and punitive damages. Complaint at ¶¶ 113–15. Defendant Aetna seeks dismissal of the fraud claim.

■ The appropriateness of the misrepresentation claim raises the same threshold questions as that of the punitive damages claim concerning choice of law and interpretation of the controlling jurisdiction's rule of law. As these questions raise no genuine issues of material fact, the Court properly may rule on the appropriateness of the misrepresentation claim on a motion for summary judgment. Fed.R. Civ.P. 56.

The Court finds that Keene's claim of fraudulent misrepresentation against Aetna must be dismissed and, therefore, grants defendant Aetna's motion for partial summary judgment as to Count IV of Keene's Third Amended Complaint.

### I. Punitive Damages

#### A. *Choice of Law*

■ To determine the applicable law in a diversity case, a Federal court first must determine whether Federal or State law applies. Procedural issues are determined under Federal law, while substantive issues must be decided under State law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since choice of law is a substantive issue under the *Erie* doctrine, a Federal court sitting in diversity must apply the choice-of-law rules of the forum in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Steorts v. American Airlines, Inc.*, 647 F.2d 194, 196–97

(D.C.Cir.1981). This Court, therefore, must apply the choice-of-law rules of the District of Columbia to determine which State's law governs the punitive damages issue.

■ District of Columbia courts employ an "interest analysis" approach which was originally applied to tort actions in *Tramontana v. S.A. Empressa De Viacao Aerea Rio Grandense*, 350 F.2d 468, 471–73 (D.C.Cir.1965), and to contract actions in *Fox-Greenwald Sheet Metal Co. v. Markowitz Bros. Inc.*, 452 F.2d 1346, 1353–54 (D.C.Cir.1971). *See Mazza v. Mazza*, 475 F.2d 385, 388 (D.C.Cir.1973); *see also Semler v. Psychiatric Institute*, 575 F.2d 922, 924 (D.C.Cir.1978). In *Mazza v. Mazza*, the United States Court of Appeals stated that "[t]he relevant inquiry focuses on the relationship of the ... jurisdictions to the controversy, the interests involved, and whether application of foreign law would offend a strong and clearly defined local policy." *Mazza v. Mazza*, 475 F.2d at 391 (D.C.Cir. 1973).

The process involves two steps. First, the Court must determine which States have an interest in the controversy at hand. Second, the Court must decide, from those found to have a conflicting interest, which State's policy would be advanced by application of its law. *See Gaither v. Myers*, 404 F.2d 216, 222 (D.C.Cir.1968). "[T]he state with the 'most significant relationship' should also be that whose policy would be advanced by application of the law, *i.e.*, the state with the greatest interest in applying its law to the issue." *In Re Air Crash Disaster at Washington, D.C.*, 559 F.Supp. 333, 342 (D.D.C.1983); *see also Semler v. Psychiatric Institute*, 575 F.2d at 924.

Keene's allegations of "bad faith" dealings by defendants arise from the insurance contracts between the parties. Keene, however, seeks punitive damages for defendants' tortious misrepresentations and misconduct. Complaint at ¶¶ 104–08.

In applying the "interest analysis" approach to tort claims, District of Columbia courts have considered the factors set forth in section 145 of the *Restatement (Second)* of Conflict of Laws. *See Hitchcock v. United States*, 665 F.2d 354, 360 (D.C.Cir. 1981). These factors are:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Restatement (Second) of Conflict of Laws* § 145(2) (1971). The *Restatement* emphasizes that these contacts are not to be applied mechanically, but "are to be evaluated according to their relative importance with respect to the particular issue." *Id.* Therefore, the Court will examine not the general interests of various states, but the precise interests in the specific issue involved. *In Re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d 594, 611 (7th Cir.1981); *In Re Air Crash Disaster at Washington, D.C.*, 559 F.Supp. at 341.

■ In the instant case, the issue is punitive damages. States' interests in compensatory damages differ from those involved in punitive damages. *E.g., James v. Powell*, 19 N.Y.2d 249, 279 N.Y.S.2d 10, 16–17, 225 N.E.2d 741, 746–47 (1967) (Puerto Rico law applies to compensatory damages; the law of New York governs punitive damages.). When the primary purpose of a rule of law is to deter or punish conduct, the States with the most significant interests are those in which the conduct occurred and in which the principal place of business and place of incorporation of defendant are located. *See Restatement (Second) of Conflict of Laws* § 145 comments c-e; *In Re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d at 613. The State of domicile of plaintiff has no interest in imposing punitive damages. "The legitimate interests of [plaintiffs' domiciliary] states, after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries.... Once the plaintiffs are made whole by recovery of the full measure of compensatory damages to which they are entitled under the

law of their domiciles, the interests of those States are satisfied." *In Re Air Crash Disaster Near Chicago, Illinois,* 644 F.2d at 613. The place where the injury occurred and where the parties' relationship is centered do not claim as great an interest in the punitive damages issue as in other tort-related issues.

The Court will apply this analysis to each of defendants' motions.

### 1. Motion of Defendant INA

Defendant INA is a Pennsylvania corporation with its principal place of business in Pennsylvania. Second Amended Complaint at ¶ 2; Answer of INA to Second Amended Complaint at ¶ 2. INA sold the insurance policies at issue to two Keene predecessors: Baldwin-Hill ("B–H") and Baldwin-Ehret-Hill ("B–E–H"). Keene Opposition to INA Motion at 3–4.

B–H, at the time of sale of the policies, was a New Jersey corporation, with its principal place of business in New Jersey. Less than three years later, in 1959, the company merged with Ehret Magnesia Manufacturing Company to form B–E–H, a predecessor subsidiary of Keene. Keene Opposition to INA Motion at 5; Reply Memorandum in Support of INA's Motion for Summary Judgment as to Keene's Claims for Punitive Damages ("Reply of INA") at 8. B–E–H was incorporated under the laws of Pennsylvania. The new company's articles of incorporation stated that B–E–H "shall be governed by the laws of the Commonwealth of Pennsylvania." Exhibit 1D to Keene Opposition to INA Motion. Nevertheless, B–E–H continued its principal place of business in New Jersey, Keene Opposition to INA Motion at 5, and INA dealt with B–E–H at its New Jersey office between 1959 and 1968. Exhibits 3–4 to Keene Opposition to INA Motion; Reply of INA at 8.

INA, however, executed the policies at issue in Pennsylvania, and sold them to B–E–H through a Pennsylvania broker.

Additionally, the policies stated that B–E–H's "principal state" of operations for computing general liability and product liability premiums was Pennsylvania. Reply of INA at 6–10. Keene previously recited these facts in response to an earlier motion of INA for partial summary judgment regarding other damage issues. Keene's Statement Pursuant to Rule 1–9(h) in Response to INA's Motion for Summary Judgment and Accompanying Rule 1–9(h) Statement (February 24, 1983) ¶ 34. Keene does not now dispute these facts, although plaintiff asserts that discovery of the policies issued to B–H in New Jersey affects the Court's choice-of-law analysis.[2] Opposition of Keene at 27–28.

Keene acquired substantially all outstanding stock of B–E–H in 1968, and B–E–H became a subsidiary of Keene. Exhibit 1 to Keene Opposition to INA Motion. Plaintiff Keene now has its principal place of business in New York. Keene Opposition to INA Motion at 27.

INA and Keene have contested at length the issue of which jurisdiction's punitive damages rule should apply in this case. INA asserts that under the facts, Pennsylvania is the only appropriate jurisdiction because of the State's significant connection with both parties and the underlying insurance policies. Reply of INA at 14.

Keene, however, contends that the choice-of-law issue is not as simple as INA suggests. Keene provides three alternative jurisdictions: the District of Columbia, New Jersey, and New York. The Court will address each proposed jurisdiction.

Keene alleges that the company suffered financial injury in defending itself in more than 15,000 asbestos-related lawsuits around the country. Complaint at ¶ 66; *see* Keene Opposition to INA Motion. The cause of this injury, as contended by Keene, was INA's misrepresentation and misconduct in switching coverage positions from exposure to manifestation. Com-

---

2. Not until September 1983 did Keene discover evidence of the B–H policies. INA earlier had notified Keene that no additional policies could be located. Exhibits 1 at ¶ 7, 2B to Keene Opposition to INA motion.

plaint at ¶ 82; Keene Opposition to INA Motion at 6–14. The decision to follow the manifestation theory of coverage presumably occurred in Pennsylvania at defendant INA's headquarters. Therefore, the place of conduct, as well as defendant INA's principal place of business and State of incorporation are Pennsylvania. These relationships to the controversy give Pennsylvania a definite interest in the punitive damages issue. The State's interest in punishing defendant INA's conduct by allowing punitive damages or in protecting a resident corporation by disallowing such damages should prevail unless another State has a stronger interest in having its law applied.

Keene challenges the application of Pennsylvania law, but offers no State with more significant interests in this particular controversy. Keene contends that New Jersey law should apply because INA sold two policies to B–H, a New Jersey corporation, and sold several other policies to B–E–H, which had its principal place of business in New Jersey. Keene Opposition to INA Motion at 15–16, 27–28.

The domicile State of plaintiff, or plaintiff's predecessors, however, has no interest in the punitive damages issue. *In Re Air Crash Disaster Near Chicago, Illinois*, 644 F.2d at 612–13. Further, B–H no longer existed in 1977 when INA's alleged misconduct occurred. Nor did B–E–H in particular suffer any alleged injuries.

New York has even less interest in this controversy. Keene's principal place of business is New York, but that fact alone, as demonstrated above, creates no interest. To bolster its argument, Keene stretches New York's interest in the instant controversy to include that of the place of injury. Keene urges the Court to consider its principal place of business as the place of injury since the company's financial burdens occurred in every State where a lawsuit was filed against Keene. Keene argues:

> The Restatement (Second) of Conflict of Laws devised a pragmatic solution to the complicated choice-of-law issue involved in multistate torts, in which the plaintiff is injured in two or more states. In such cases, the state of the plaintiff's domicile is presumed to have the most significant relationship with the claim. With regard to corporations, ... courts sometimes look to the state of the corporation's principal place of business....

Keene Opposition to INA Motion at 25.

The Court disagrees with Keene's analysis. Comment e to section 145 of the *Restatement (Second)* states that the place of *conduct* should be given "particular weight" in a multistate tort, especially when the States where the injury occurred have little relationship to the controversy. *Restatement (Second) of Conflict of Laws*, § 145(2) comment e (1971). The Court need not even consider the place of injury in the instant controversy. "[T]he place of injury will not play an important role ... when, such as in the case of fraud and misrepresentation ..., there may be little reason in logic or persuasiveness to say that one state rather than another is the place of injury...." *Id.* "[When the] primary purpose ... is to deter or punish ..., not to compensate, ... the state where the conduct took place rather than the state where the injuries 'occur' is the 'state of dominant interest and thus that of most significant relationship.'" *Houston North Hospital Properties v. Telco Leasing*, 688 F.2d 408, 409 (5th Cir.1982).

Similarly, the Court finds that the District of Columbia has no interest in the punitive damages issue. Keene lists three reasons that the law of the District should apply: INA's concealment of evidence and advocacy of a false position; injury to Keene in part occurring in the District by the filing of lawsuits here; and both parties doing business in the District. Keene Opposition to INA Motion at 20–21.

The location of the instant litigation is fortuitous. Keene could have brought this case before numerous other Federal Courts. The District, with no significant relationship to the insurance contracts in question, is a disinterested rather than an interested forum. *See National Union*

*Fire Insurance Co. v. RLC Corp.*, 449 A.2d 257, 262 (Del.Super.1982).

Both parties doing business in the District also has no bearing on the punitive damages issue. Nothing surrounding the instant controversy occurred in or particularly affected the District of Columbia.

Keene's argument that its injuries in part occurred in the District similarly is rejected. As discussed at length previously, the place of injury is of minor importance to the punitive damages claim.

The Court, therefore, finds that Pennsylvania law regarding punitive damages shall control the motion of defendant INA.

2. Motion of Defendant Liberty

The same "interest analysis" applies to the motion of defendant Liberty.

Defendant Liberty's State of incorporation and principal place of business is Massachusetts. Second Amended Complaint at ¶ 5; Liberty's Answer to Second Amended Complaint and Counterclaim at ¶ 1. The policies in question were countersigned by Keene and delivered in New York. Reply Memorandum of Liberty in Support of its Motion for Summary Judgment as to Counts III, IV and VI of Keene's Third Amended Complaint at 3.

Liberty contends that New York law should apply to the punitive damages issue because of Keene's previous assertion that New York law governed interpretation of the insurance policies between Keene and Liberty. Keene's assertion was made with respect to its claim for prejudgment interest. *Id.;* Keene Opposition to Liberty Motion at 37.

Courts have long recognized that they are not bound to decide all issues under the local law of a single State. Each issue must receive separate consideration because of the varying interests involved. *Restatement (Second) of Conflict of Laws* § 145(1) comment d (1971). For example, the State of execution of a contract would have a strong interest in having its law apply to an issue of contract construction. The question of the validity of a contract,

on the other hand, would more significantly involve the interests of the place of performance.

Liberty's contention that New York law must apply to all issues lacks merit. "The search ... is not for the state whose law will be applied to govern all issues in a case; rather it is for the rule of law that can most approximately be applied to govern the particular issue...." Reese, *Depecage: A Common Phenomenon In Choice of Law,* 73 Colum.L.Rev. 58, 59–60 (1973). The Court must examine the specific interests involved in the punitive damages issue.

New York has several contacts with the instant controversy. The State is Keene's principal place of business and the insurance policies in question were countersigned and delivered in New York. But the States with the most significant interests in a punitive damages issue are the State of incorporation and principal place of business of defendant, and the State where the alleged misconduct occurred. The State of execution and delivery is important to the question of contract interpretation, but not to the question of punitive damages. Similarly, plaintiff's principal place of business is irrelevant to this issue.

In this case, Massachusetts claims the most significant interests as Liberty's incorporating State and principal place of business. In addition, Liberty's alleged misconduct in switching its theory of coverage and, thereafter, refusing to defend Keene presumably occurred at the insurance company's corporate headquarters. Regardless of the place of actual decision, Massachusetts has the greatest connection to the conduct as the "place where ultimate responsibility for the conduct lies." *In Re Air Crash Disaster at Washington, D.C.,* 559 F.Supp. at 358.

Keene's repeated contention that District of Columbia law should apply is rejected for the reasons stated above. Keene Opposition to Liberty Motion at 21. The Court finds that Massachusetts law shall apply to

Keene's claim of punitive damages from Liberty.

### 3. Motion of Defendant Aetna

Defendant Aetna's contractual relationship with Keene is similar to that of Liberty. The insurance policy in question was issued to Keene at its principal place of business in New York. The transaction occurred through Aetna's New York office and a New York insurance broker. Memorandum in Support of Motion of Aetna for Summary Judgment as to Count IV and as to Keene's Claims for Punitive Damages in Counts III, IV and VI of its Third Amended Complaint ("Motion of Aetna") at 4. The Court agrees with Aetna's conclusion that the parties' contractual relationship is centered in New York, *id.*, but rejects Aetna's contention that New York law must therefore apply.

Aetna fails to articulate the particular interests involved in the punitive damages issue. The Court previously has analyzed those interests and concluded that the place of incorporation, the principal place of business, and the place of conduct hold the most significant interests.

■ Aetna is a Connecticut corporation, with its principal place of business in Connecticut. Second Amended Complaint at ¶ 3. Defendant's corporate headquarters in Connecticut would be responsible ultimately for the company's alleged misconduct, even if the decision to employ the manifestation theory of coverage was made in New York. Thus, the conduct creating the tort claims arose in Connecticut. New York's interests are limited to issues regarding the interpretation of the contract, as the place of issuance, and the awarding of compensatory damages for breach of contract, as plaintiff's principal place of business.

Keene, dissatisfied with defendant Aetna's proposed application of New York law, again attempts to apply the law of the District of Columbia. Keene Opposition to Aetna Motion at 27–28. The Court again rejects Keene's contention and finds that

Connecticut law shall apply to Keene's claim for punitive damages against Aetna.

### B. *Application of the Law*

#### 1. Pennsylvania Law

■ The Court's next inquiry regarding INA's motion is whether Pennsylvania law permits recovery of punitive damages for "bad faith" conduct by insurance companies. The Court finds that Keene may not recover punitive damages from INA.

The Pennsylvania Supreme Court directly addressed this issue in two 1981 decisions, *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981) and *Smith v. Harleysville Insurance Co.*, 494 Pa. 515, 431 A.2d 974 (1981).

Insureds in both Pennsylvania cases sought punitive damages for alleged "bad faith" conduct by the insurers, as does Keene in the instant case. In *D'Ambrosio*, the court recognized the "seriousness of 'bad faith' conduct by insurance carriers," but held that the State's Unfair Insurance Practices Act was the proper means of deterrence. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 431 A.2d at 969. The Act provides, in pertinent part, that "[n]o person shall engage in this State in any trade practice which is defined or determined to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance pursuant to this act." Unfair Insurance Practices Act, 40 P.S. § 1171.4 (Supp.1980). The Act further defines "unfair methods of competition" and "unfair or deceptive acts or practices" to include, among several others, "[m]isrepresenting pertinent facts or policy or contract provisions relating to coverages at issue." *Id.* at § 1171.5.

The court in *D'Ambrosio* refused to supplement the Act by awarding punitive damages. "An award of punitive damages unquestionably is a deterrent device, ... one which is unnecessary in view of the present legislative-created regulatory scheme." *D'Ambrosio v. Pennsylvania National*

*Mutual Casualty Insurance Co.,* 431 A.2d at 970. The court left to the legislature the decision to impose any additional sanctions. *Id.*

The Pennsylvania Supreme Court in *Smith v. Harleysville* reiterated its refusal to create a judicial cause of action against insurers for bad faith conduct and affirmed the dismissal of the counts in which the insured sought punitive damages. *Smith v. Harleysville Insurance Co.,* 431 A.2d at 975.

Plaintiff Keene cites only one case to support its proposition that Pennsylvania law would impose punitive damages under proper circumstances. In that case, a Pennsylvania trial judge suggested that *D'Ambrosio* be limited to its facts. *Bronner v. Metropolitan Insurance Co.,* 20 Pa.D. & C.3d 509, 510 (Pa.Ct.C.P., Philadelphia Cty.1981).

Although the court found in *D'Ambrosio* and *Smith* that neither insured factually stated a cause of action for "bad faith" conduct, the Pennsylvania Supreme Court in no way intimated that its holdings in those cases were limited to the facts. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 431 A.2d at 970–71; *Smith v. Harleysville Insurance Co.,* 431 A.2d at 975. Further, appellate courts of Pennsylvania and Federal courts interpreting Pennsylvania law have unhesitantly followed the State Supreme Court's decisions. *E.g., Myers v. USAA Casualty Insurance Co.,* 298 Pa.Super. 366, 444 A.2d 1217, 1219–10 (1982); *Nazer v. Safeguard Mutual Assurance Co.,* 293 Pa.Super. 385, 439 A.2d 165, 166 (1981); *Evans v. Government Employees Insurance Co.,* 291 Pa.Super. 342, 435 A.2d 1258, 1259 (1981); *Commercial Union Assurance Co. v. Pucci,* 523 F.Supp. 1310, 1321 (W.D.Pa.1981).

This Court is unable to carve out desirable exceptions to Pennsylvania law. "A federal court in a diversity case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the

State...." *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975). The Court must respect Pennsylvania's policy of not imposing punitive damages against insurance companies, which reflects the State's judgment to protect the financial security of resident corporations rather than impose punitive damages to regulate conduct. *See Jackson v. Koninklijke Luchtvaart Maatschappij N.V.,* 459 F.Supp. 953, 956 (S.D.N.Y.1978).

The Court therefore concludes that Pennsylvania law precludes recovery of punitive damages from INA in the instant case and limits Keene's remedy to the Unfair Insurance Practices Act.

### 2. Massachusetts and Connecticut Law

The parties have not argued or briefed Massachusetts and Connecticut law applicable to the punitive damages issue. The Court defers judgment on the motions of defendant Liberty and defendant Aetna so that the parties may address themselves to such law. The Court expects the parties to complete briefing on this issue by November 7, 1984.

### II. Count IV: Misrepresentation

Defendant Aetna further seeks dismissal of Keene's claim for fraudulent misrepresentation. Motion of Aetna at 8. In Count IV of its complaint, Keene alleges that Aetna (and the other three defendants) misrepresented the extent of coverage of the policies issued to Keene. The alleged misrepresentation occurred not at the time of issuance of the liability policies, but several years later after claims for asbestos-related injuries were filed with the insurance companies. *See* Complaint at ¶¶ 82–94.

### A. Choice of Law

Whether this Court may uphold a claim for misrepresentation raises a choice-of-law issue that must be resolved under the "interest analysis" of the District of Columbia. Aetna contends, as it did for the punitive damages issue, that New York law must apply because of the State's relationship to the parties and the controversy.

Motion of Aetna at 4. Conversely, Keene claims that the District of Columbia has a stronger interest in the instant dispute for the reasons stated in the Court's discussion on punitive damages, *i.e.*, the location of the instant litigation, the location of the filing of several asbestos-related suits against Keene, and the place where both parties are doing business. Keene Opposition to Aetna Motion at 27–28.

 To determine whether a claim of misrepresentation may lie, the Court must look to the interests important to the particular issue to be decided. Section 148 of the *Restatement (Second) of Conflict of Laws* sets forth the contacts relevant to claims of fraudulent misrepresentation:

- (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
- (b) the place where the plaintiff received the misrepresentations,
- (c) the place where the defendant made the representations,
- (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
- (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
- (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws* § 148(2) (1971). The *Restatement* takes the general approach that if any two of the contacts listed above are located wholly in a single State, the applicable law of that State should govern. *Id.* at § 148(2) comment j.

In the instant case, at least three of the relevant contacts are located in New York. First, plaintiff Keene's principal place of business is in New York. Keene Opposition to INA Motion at 27. This contact is "of substantial significance" to the misrepresentation issue, especially "when the loss

is pecuniary ... because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." *Restatement (Second) of Conflict of Laws* § 148(2) comment i. The principal place of business of plaintiff is more important than that of defendant because of the general compensatory, rather than punitive, nature of the misrepresentation claim. *Id.; Federated Capital Corp. v. Florida Capital Corp.*, 280 F.Supp. 301, 302–03 (S.D.N.Y. 1968). Defendant's principal place of business is "irrelevant to the consideration of the consequences of its alleged misconduct." *Federated Capital Corp.*, 280 F.Supp. at 303.

Second, New York presumably is the place where Keene relied on defendant Aetna's representation that liability coverage was triggered only by manifestation of asbestosis, and not exposure. As Keene's principal place of business, New York would be the location of any corporate decision to expend funds to defend itself in the thousands of lawsuits filed against Keene. The places of actual litigation are not important since Keene acted to its detriment by *authorizing* the litigation and expenditure of funds.

Third, New York presumably is the place where Keene received Aetna's representation.

These three contacts are sufficient to establish a significant relationship between New York and the instant controversy. The District of Columbia, on the other hand, has no interest in the dispute. Its contacts to the instant litigation are irrelevant to the issue of misrepresentation. The only other State with any possible interest would be Connecticut, which is defendant's principal place of business and the possible place where Aetna made the representations regarding the scope of coverage. As stated previously, defendant's principal place of business alone is not significant to the misrepresentation issue. Further, Aetna's coverage statements may have been made to Keene through its New York office.

Regardless of where the representations were made, the Court finds that New York has the most significant interest in having its law applied to the misrepresentation issue.

## B. *Application of the Law*

Under New York law, a claim for misrepresentation clearly may not be brought solely in connection with a breach of contract. "A fraudulent breach of contract is not the basis for a cause of action in fraud. Where the only claim of fraud that is charged concerns a breach of contract and not inducement to enter the contract, an action for fraud is not properly alleged." *England Strohl/Denigris, Inc. v. Weiner,* 538 F.Supp. 612, 615 (S.D.N.Y. 1982); *see also,* 37 Am.Jur.2d *Fraud and Deceit* § 21 (1968) ("[F]raudulent breach of contract does not give rise to an action for fraud....", citing *Drydock Knitting Mills, Inc. v. Queens Machine Corp.,* 254 A.D. 568, 2 N.Y.S.2d 717 (1938)).

The seminal case is *Brick v. Cohn-Hall-Marx Co.,* 276 N.Y. 259, 11 N.E.2d 902 (1937). In *Brick,* the parties entered into a contract for royalties for defendant's use of a package to manufacture bolts of cloth. Plaintiff thereafter filed a suit for unpaid royalties, alleging that defendant failed to pay the agreed amount and falsified his sales books to conceal the number of sales. Plaintiff filed a cause of action for fraud, rather than breach of contract, to circumvent the statute of limitations. *Id.* at 903.

The Court of Appeals of New York, in affirming the dismissal of the fraud claim, held that by pleading fraud a plaintiff could not change the nature of the action.

The basis of the action is the contract. The claim of the plaintiffs is based upon the contract; in other words, if the defendant owes the plaintiffs any money, it is because of the agreement which it made to pay royalties upon sales which were made.... If there were fraud extraneous to the contract ... a different situation might arise.

*Id.* at 904.

The instant case is similar to the situation in *Brick.* Plaintiff Keene has filed this action against Aetna for funds owed under the parties' policy provision relating to Aetna's duty to defend. Keene alleges that Aetna fraudulently misrepresented that its duty to defend arose only upon manifestation of asbestos-related injuries. Aetna's representation does not constitute a "fraud extraneous to the contract", but is dependent upon Aetna's duty to defend under the insurance policy. If the statute of limitations ran on the contract, Keene could not sue Aetna for failure to defend. Nor could Keene file an independent action for fraud. The parties' are legally bound only by their contractual relationship.

Keene contends that its claim for misrepresentation may be enforced regardless of the enforceability of the underlying agreement. Keene relies principally on two cases, *North Shore Bottling Co. v. C. Schmidt and Sons, Inc.,* 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968) and *Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y. S.2d 259, 151 N.E.2d 833 (1958).

In *North Shore,* the court held that "a contracting party may be charged with a separate tort liability arising from a breach of duty distinct from, or in addition to, the breach of contract." *North Shore Bottling Co. v. C. Schmidt and Sons, Inc.,* 239 N.E.2d at 193. The separate tort, however, involved fraudulent action independent of any breach of contract. Defendant in *North Shore* was charged with conspiring to cheat and defraud plaintiff. *Id.*

Similarly, in *Channel Master* the court upheld a fraud claim against a contracting party for "fraudulently misrepresent[ing] himself as intending to perform an agreement." *Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 151 N.E.2d at 836.

Neither of these cases is applicable to the instant situation. New York courts clearly allow an independent tort action against one who makes a contractual promise with no intent to perform and one who fraudulently induces another to enter into a con-

tract. "However, where the complaint merely alleges, in essence, the non-performance of a contractual obligation, an action in fraud will not lie; 'actionable fraud depends on more than a showing of non-performance,' ... or a 'mere breach of a contract.'" *Sherkate Sahami Khass Rapol v. Henry. R. Jahn & Son,* 531 F.Supp. 1048, 1061 (S.D.N.Y.1982).

Keene does not allege that defendant Aetna fraudulently induced Keene to enter into the contract, nor that Aetna promised to defend Keene with no intention of performing. The Court, therefore, dismisses plaintiff's claim for misrepresentation against Aetna.

In accordance with the above, the Court grants partial summary judgment for defendant INA and defers judgment on the motions of defendant Liberty and defendant Aetna on the issue of punitive damages. The Court further grants partial summary judgment for defendant Aetna as to Count IV of plaintiff's Third Amended Complaint.