**LEXINGTON PRODUCTS LIMITED,**
Plaintiff-Appellant,

v.

**B. D. COMMUNICATIONS, INC.,**
Defendant-Appellee.

**No. 656, Docket 81–7606.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 22, 1982.

Decided April 23, 1982.

David G. Samuels, New York City (Butler, Fitzgerald & Potter, New York City, Raymond Fitzgerald, New York City, of counsel), for defendant-appellee.

Robert W. Cinque, New York City (Marshall, Morris, Powell & Silfen, New York City, Paul G. Marshall, James P. Cinque, New York City, of counsel), for plaintiff-appellant.

Before FEINBERG, Chief Judge, and LUMBARD and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

█ In this diversity suit for breach of contract, plaintiff Lexington Products Limited ("Lexington") appeals from an award of one dollar in nominal damages against B.D. Communications, Inc. ("B.D.") by Judge Owen, Southern District of New York, entered July 17, 1981 after a two day non-jury trial. Judge Owen found that the damage suffered by Lexington was too speculative, and thus limited its recovery to nominal damages. We disagree. As we find evidence in the record from which substantial damages may be computed with reasonable certainty, we vacate the judgment below and remand for further proceedings.

Lexington, a corporation organized under the laws of the United Kingdom and located in Middlesex, England, successfully markets its Nenette brush and Nenetol liquid in Great Britain. The polishing brush, when impregnated with the liquid, causes dust to adhere to the brush and is promoted as an effective cleaning agent. Lexington's desire to expand the market for its dusting brush and liquid to the United States lead to a market test of the Nenette brush by B.D., a New York corporation which sells products through media advertising. Subsequently, on March 10, 1977, in New York, Lexington entered into an exclusive marketing agreement with B.D., effective April 1, 1977. The agreement stated that Lexington granted to B.D. an exclusive license to sell, market and promote the Nenette brush and the Nenetol liquid in the United States. B.D. agreed to make minimum purchases from Lexington of 200,000 brushes a year at cost for the life of the contract;[1] to pay Lexington royalties for each brush sold in an amount equal to the greater of $.375 or 7½% of the suggested retail list price; to spend at least $500,000 in television advertising and promotion for each year of the contract and to use its best efforts to exploit Lexington's products in the United States.

The bright future of Nenette sales envisioned by both Lexington and B.D. in March, 1977 had faded by September of that year. Judge Owen found, and the parties do not dispute, that in total B.D. sold 60,843 brushes and spent $104,038.43 in advertising, well below the minimum requirements of the contract, and that B.D. abandoned their promotional television campaign after approximately four months of disappointing sales. It appears from the record that all advertising efforts ceased in September, 1977.

With B.D.'s steady decline in advertising outlays there was a corresponding decline in Nenette sales. From February 28, 1977 through June, 1977, B.D. incurred $90,891.97 in advertising costs and 52,875 Nenette brushes were sold. B.D. then decreased its promotional expenses to $34,769.49 during July, 1977 through September, 1977 and only 7,267 Nenette brushes were sold during this time period.

---

1. The contract had a one-year term, with provisions for yearly renewals up to a maximum term of nine years. Lexington's computations for its alternate bases for recovery are based on the two years the agreement was in effect prior to B.D.'s breach.

Judge Owen held that "there is no question that defendant dishonored its contract." He also found, however, that "plaintiff has not satisfactorily demonstrated what the sales of its product would have been had the defendant continued the television advertising required by the contract." Consequently, he awarded nominal damages of only one dollar.[2]

We agree with Lexington that the evidence presented to the district court offered two alternatives for computation, each of which provided a sufficient, and not a speculative, basis for an award of substantial damages. The first alternative is based on the relationship between the money B.D. spent on advertising and the Nenette sales which resulted. Lexington proposes that this court divide the $104,038.43 in B.D.'s advertising outlays by the 60,843 brushes sold, to arrive at a ratio of .584813 dollars per brush. If B.D. had complied with its agreement to invest one million dollars in television promotion then, applying this ratio, 584,813 brushes would have been sold and B.D. would owe Lexington $219,304.38 in royalties. After deducting $24,670.01 for royalties already paid, B.D.'s indebtedness to Lexington would now total $194,634.87.

The second basis for the calculation of damages is based on Lexington's expectations that B.D. would exert its "best efforts" to sell the Nenette brushes. During the two years the agreement remained in effect, B.D. was obligated to purchase 400,000 brushes. Lexington reasonably anticipated that at the very least B.D. would sell the 400,000 brushes it had agreed to purchase. Consequently, B.D. would have owed Lexington $150,000, less $24,670.01 royalties paid, to arrive at a balance due of $125,329.99.

The district court erred in awarding nominal damages when two bases for recovery, formulated from undisputed evidence in the record, were available. Both alternatives for recovery suggested by Lexington provide an acceptable degree of certainty. *See Perma Research and Development v. Singer Co.*, 542 F.2d 111, 116 (2d Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). The parties agreed that New York law would govern their contract, and New York courts do not require scientific rigor in the calculation of damages.

When it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be any good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he had caused is uncertain.

*Randall-Smith, Inc. v. 43d St. Estates Corp.*, 17 N.Y.2d 99, 106, 215 N.E.2d 494, 498, 268 N.Y.S.2d 306, 312 (1966), *quoting Wakeman v. Wheeler & Wilson Mfg. Co.*, 101 N.Y. 205, 209, 4 N.E. 264, 206 (1886). *Accord Contemporary Mission, Inc. v. Famous Mission Corp.*, 557 F.2d 918, 926 (2d Cir. 1977). This principle has been restated by the Supreme Court: where a wrong has been done, the courts will endeavor to make a reasonable estimate of damages. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264–66, 66 S.Ct. 574, 579–80, 90 L.Ed. 652 (1945). We conclude that each of the two measures submitted by Lexington provides a rational basis for computation of damages.

The district court's reliance on *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 314 N.E.2d 419, 357 N.Y.S.2d 857 (1974), is unpersuasive. In *Freund*, the defendant publisher breached his contract by refusing to publish plaintiff's work on modern drama. The defendant's breach resulted in Freund's loss of anticipated royalties and costs of publication if he chose to publish the book himself. Mr. Freund, an associate professor at Fordham University, had published other books in the past but they were unrelated to the subject of modern drama. The record in *Freund* did not indicate any public acceptance of his unpublished work. Absent any reliable means to

---

**2.** The judgment included an award of $1,434.78 against B.D. for unpaid royalties for brushes sold from which B.D. has not appealed.

ascertain financial losses, Mr. Freund's injury was deemed too speculative to warrant damages beyond six cents. *Freund, supra,* 34 N.Y.2d at 383–84, 357 N.Y.S.2d 857, 314 N.E.2d 419. Moreover, Freund had already received, as promised, an advance against royalties. The instant case does not, as Judge Owen suggested, present "virtually identical circumstances" to *Freund.* Lexington has shown a track record of Nenette sales before B.D.'s breach, whereas Mr. Freund's drama book had no prior sales history. Here, unlike *Freund,* the evidence supplies us with a basis for multiple mathematical calculations capable of determining with some specificity the financial repercussions of B.D.'s breach.

The record of sales and advertising outlays set forth by Lexington is competent evidence supporting an educated computation of damages and an award based thereon. Where the evidence shows such a clear and definite measure of damages, an award of nominal damages cannot stand.

We vacate the judgment below and remand the case to the district court for further proceedings to award damages. Reversed and remanded.