**OSTANO COMMERZANSTALT and Dr. Herbert Jovy, Plaintiffs-Appellees,**

**v.**

**TELEWIDE SYSTEMS, INC. and Bernard L. Schubert, Defendants-Appellants.**

No. 633, Docket 85–7415.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1985.

Decided June 23, 1986.

---

Thomas R. Newman, New York City (Siff & Newman, P.C., Joann R. Blasberg, of counsel), for defendants-appellants.

William M. Barron, New York City (Walter, Conston & Schurtman, P.C., Jeff V. Nelson, Nathaniel D. Chapman, of counsel), for plaintiffs-appellees.

Before OAKES, KEARSE, and PIERCE, Circuit Judges

OAKES, Circuit Judge:

This diversity case involving licensing of the right to exhibit films concerns the propriety of benefit-of-the-bargain damages for fraud, the sufficiency of the evidence relating to damages for breach of contract and warranty, and the permissibility of an award of punitive damages. The United States District Court for the Southern District of New York, Robert L. Carter, Judge, after a bench trial, held that defendant Telewide Systems, Inc. ("Telewide"), and its president and sole shareholder, Bernard L. Schubert, had committed fraud, false representation, and fraudulent breach of warranty and that defendant Telewide had committed breach of warranty and breach of contract by entering into an exclusive contract granting distribution rights to twenty-six films when Telewide lacked authority to grant rights to eleven of those films. The court awarded damages for the three types of fraud claims established against Telewide and Schubert jointly and severally in the amount of $4,262,021.75. It held defendant Telewide liable for a similar sum for breach of contract and breach of warranty. The court also ordered $500,-000 in punitive damages, for which Schubert and Telewide were to be jointly and severally liable, by virtue of the deliberate and willful nature of the fraud, Schubert's misrepresentations on the witness stand, and the introduction of fabricated evidence. The court's final order gave prejudgment interest in the amount of $1,751,165.48, plus interest to accumulate from the date of judgment. An award of attorneys' fees under consideration by the district court at the time of the appeal is not involved here. We affirm as to liability and reverse and remand as to damages.

Judge Carter's published opinion, *Ostano Commerzanstalt v. Telewide Systems, Inc.*, 608 F.Supp. 1359 (S.D.N.Y.1985), sets forth the facts in depth and familiarity with it will be presumed. For our purposes it is sufficient to say that Telewide entered a licensing agreement with Video Communications, Inc. ("VCI"), giving VCI exclusive rights to show twenty-six feature films in eight European countries. This license was dated May 13, 1980, and ran for a period of twelve years at a total price of $442,000. The agreement provided that it would be interpreted in accordance with the

laws of New York.[1] By agreement dated May 20, 1980, VCI sublicensed the package of films to appellee Dr. Herbert Jovy, the chief stockholder of Ostano, at a contract price of $702,000. This sublicense to Jovy was superseded by an agreement dated November 26, 1980, in which VCI sublicensed the Telewide films to Ostano. The Ostano sublicense purported to transfer exclusive rights to distribute the twenty-six films not only in the eight European countries in the original license but also in additional territories: Liechtenstein, Morocco, Zaire, Monaco, and the Congo. The price of the sublicense remained the same. Plaintiffs brought suit against VCI in September 1981, alleging that VCI lacked distribution rights to some of the films. That action was settled; as part of the settlement, VCI assigned its rights in its contract with Telewide to Ostano.

Judge Carter made the finding, challenged here, that plaintiffs entered the sublicense agreement in reliance on Telewide's purported valid and exclusive ownership of the rights to the twenty-six films and on its purported authority to license, distribute, and exploit those films in the territory in question. 608 F.Supp. at 1365–66.

Telewide and Schubert argue that the fraud judgment should be vacated because there was insufficient proof that either VCI or Ostano relied on any misrepresentations made by Telewide or Schubert. They argue that VCI cannot be found to have relied on the alleged misrepresentations because it knew that Telewide had problems with two of the films by June 1980, well before making final payment in March 1981, and because VCI's lawyer, prior to March 1981, had personally reviewed the documentation for certain of the films and had verified who had the rights to them so that, at least as to the March 1981 payment to VCI, there was no reliance on Telewide. And appellants point out that in the November 1980 sublicense to Ostano VCI granted rights in territories not even mentioned in its license from Telewide; in sublicensing rights to Ostano that it never obtained from Telewide, VCI could not have been relying on Schubert's or Telewide's representations.

Similarly, appellants argue that Ostano did not rely on their misrepresentations because in November 1980, when the Ostano sublicense was entered into, Jovy was well aware that Telewide lacked rights to some of the films. They also argue that Jovy was willing to accept and rely on VCI representations and warranties and was not looking to Schubert or Telewide, as evidenced by the fact that Jovy caused payment of $331,000 to be made to VCI in March 1981, after receiving the VCI lawyer's assurances that he had personally verified rights to several of the films.

■ We disagree with appellants' contentions. While VCI may have had some questions regarding Telewide's rights to particular films, this does not mean that as a matter of law VCI could not have relied on Telewide's representations that, individual problems aside, Telewide had the authority to license this package of films. The district court found that misrepresentations of Telewide and Schubert induced VCI to enter the contract, 608 F.Supp. at 1365–66; this determination is not clearly erroneous.

■ With respect to Ostano, the district court found that VCI's negotiations with Telewide resulted in a deal only when Blair, VCI's president, advised Schubert that there was potentially a buyer (Dr. Jovy) for the twenty-six films involved. *Id.* at 1366. VCI was in effect a middleman; indeed, Telewide paid Blair a $15,000 "brokerage commission" for the transaction. Thus, Schubert knew that Jovy and Ostano would be the ultimate recipients of the license and might rely on the representations he made. *See Peerless Mills, Inc. v. AT & T Co.*, 527 F.2d 445, 450 & n. 2 (2d Cir.1975). Since the leading case of *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179, 174 N.E. 441,

1. Because of the choice of law clause, appellee's contract claims are governed by New York law. Neither the parties nor the district court addressed what law should properly be applied to the fraud claims; however, the parties appear to agree that New York law applies.

444 (1931), a fraudulent misrepresentation made with "notice in the circumstances of its making" that the person to whom it was made would communicate it to third parties subjects the person making the misrepresentation to liability to the third party. *See* Restatement (Second) of Torts § 533 (1976). Thus, Schubert and Telewide had a duty to Ostano. That duty was breached. As late as June 1981, Schubert indicated to Jovy himself that he could deliver all the films in the package. The district court correctly concluded that Jovy and Ostano were defrauded by Schubert and Telewide.

■ We disagree, however, with the district court's calculation of damages. In the first place, the law of New York is plain that out-of-pocket rather than benefit-of-the-bargain damages are awarded for fraud so that "all elements of profit are excluded." *See AFA Protective Systems, Inc. v. AT & T Co.,* 57 N.Y.2d 912, 914, 442 N.E.2d 1268, 1269, 456 N.Y.S.2d 757, 758 (1982). *See also Clearview Concrete Products Corp. v. S. Charles Gherardi, Inc.,* 88 A.D.2d 461, 467, 453 N.Y.S.2d 750, 755 (2d Dept.1982) ("The prime standard for measuring the actual pecuniary loss sustained as a direct result of fraud is the 'out of pocket' rule."). New York does not even follow the compromise position adopted by the Restatement (Second) of Torts § 549(2) (1976), which gives the plaintiff out-of-pocket damages plus additional damages sufficient to give him the benefit of his bargain in any case in which the latter measure can be proved with reasonable certainty. *Hotaling v. A.B. Leach & Co.,* 247 N.Y. 84, 88, 159 N.E. 870, 871 (1928), did suggest that some flexibility was appropriate with respect to the out-of-pocket rule, but it involved a situation in which the strict application of the out-of-pocket rule would have denied the plaintiff any remedy at all. *Id.* at 90, 159 N.E. at 872.

Ostano and Jovy claim that there is a distinction between fraud that induces a contract and fraud that constitutes an essential part or "core" of the contract. But, as *Sager v. Friedman,* 270 N.Y. 472, 481, 1 N.E.2d 971, 974 (1936), indicates, misrepresentations that form an essential part of the contract give rise not to a fraud claim, but rather to a claim for breach of warranty, damages for which include lost profits; the tort of fraudulent misrepresentation relates to the inducement to enter into the contract, and damages are limited to the actual pecuniary loss, excluding profit, sustained as a result of the fraud. Fraud and breach of contract are distinct causes of action. *See Ainger v. Michigan General Corp.,* 476 F.Supp. 1209, 1233 (S.D.N.Y. 1979) (New York courts have not departed form the out-of-pocket rule for damages in fraud, but where fraud takes the form of a breach of express warranty the ordinary contract measure of damages is applied so as to entitle the injured party to the benefit of his bargain), *aff'd,* 632 F.2d 1025 (2d Cir.1980).

■ Therefore, the most that Ostano and Jovy are entitled to recover on the fraud claim is any out-of-pocket loss suffered either by them or by VCI. VCI appears to have suffered no out-of-pocket loss; it paid Telewide less than the $512,-021.75 it received from Ostano. Ostano thus may take nothing on VCI's behalf on the fraud claim. Ostano's out-of-pocket payment for the sublicense was $512,-021.75. As the appellants point out, however, Ostano received something of value in exchange: some of the films in the package were in fact licensed. Jovy testified that nine films were licensed to Polygram in Hamburg, of which only two could be delivered because Ostano did not have the remaining seven; that four were licensed and sent to the West German broadcasting chain, two of which were returned; and that one or two were licensed to the Bavarian broadcasting chain. While there is no evidence regarding what, if any, payment was made to Ostano, in light of the actual marketing of the films it cannot be said that the Telewide package was worthless. The burden is on the plaintiff to prove its actual pecuniary loss resulting from the fraudulently induced transaction. *See Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd.,* 265 F.2d 418, 422

(2d Cir.1959). Ostano thus has the burden of proving which films it was unable to license because no rights were received and what it was paid for the licenses it did grant. Failing such proof, the actual pecuniary loss suffered would appear to be limited to the out-of-pocket cost of acquiring the eleven films for which rights were found lacking.[2]

■ Ostano and Jovy can obtain benefit-of-the-bargain damages for breach of contract and warranty, although these run only against Telewide and not against Schubert personally, since he was not a party to the contract. *See Sager v. Friedman,* 270 N.Y. at 481, 1 N.E.2d at 974 ("The injured party is entitled to the benefit of his bargain.... That loss may include the profits which he would have derived from performance of the contract."). There nevertheless must be a "stable foundation for a reasonable estimate" of the value of the bargain made. *Freund v. Washington Square Press, Inc.,* 34 N.Y.2d 379, 383, 314 N.E.2d 419, 421, 357 N.Y.S.2d 857, 861 (1974); *see also Lexington Products Ltd. v. B.D. Communications, Inc.,* 677 F.2d 251, 253–54 (2d Cir.1982) (damages need not be proven with certainty, but should be based on rational calculation). The district court properly rejected Ostano's contention that it was entitled to compensatory damages based on its loss of a lucrative contract to lease films to Springer Publications; as the district judge pointed out, the discussions with Springer related to a great many films other than the Telewide package, and there was insufficient evidence to show that the Springer contract would have been signed but for the problem of Telewide's rights to the films. 608 F.Supp. at 1366.

■ The district court nonetheless awarded damages based upon reasoning with which we cannot agree. It found that the value of the license was $3,750,000 and awarded compensatory damages of $4,262,021.75—$3,750,000 plus the $512,021.75 Ostano paid for the sublicense. The district court noted that defendants, as part of their affirmative defenses, claimed that the value of the exclusive license in the territories of Zaire and Morocco was $750,000. The court further noted that there are 761,000 television sets in those two countries. Extrapolating from this data, the court concluded that "there seems to be almost a one to one relationship between the value of an exclusive license and the number of TV sets," *id.,* and determined that since there are some 51,705,000 television sets in the European territory covered by the Telewide license to VCI, the value of an exclusive license could approximate $50,000,000. That being the case, the court stated that "placing a value of an exclusive license in the territory at five times greater than a license for Morocco and Zaire [i.e., $3,750,000] would not appear to be unreasonable." *Id.* at 1366–67. We believe no such extrapolation can be made from Morocco and Zaire to the European territory and therefore we find this an unsatisfactory method of determining the value of the license, particularly absent expert testimony to support it. On remand the court may consider this issue open for the taking of further evidence.

■ Moreover, in determining the extent of the benefit of the bargain, the district court added what was paid for the license to the compensatory damages. That amount should properly have been dis-

---

**2.** Telewide and Schubert argue that the per-film contract price for the license from VCI to Ostano cannot be used as the basis for the calculation of damages because that license granted territories and rights to satellite transmission not included in the original license from Telewide to VCI. We think the fact that Ostano's contract with VCI provided for additional territories is irrelevant. These territories were added to the Ostano-VCI contract that superseded the original contract between Jovy and VCI, but the contract price remained the same. This suggests that the additional territories did not affect the contract price and need not be considered in assessing damages. The satellite transmissions, by contrast, were included in the VCI-Jovy contract, and it remains for the district court to determine whether these rights were additional to those VCI obtained in its license from Telewide and, if so, what if any effect they had on the contract price.

regarded in calculating breach of contract damages. Awarding Ostano its contract price as well as its lost profit put Ostano in a better position than it would have been in had the contract been satisfactorily performed.

We pass then to the issue of punitive damages. We do not question the court's finding that "the evidence is persuasive and convincing that Schubert fabricated evidence and introduced this false evidence at trial as genuine, and that counsel knew, or at least had reason to suspect, that the evidence was not genuine but sought to help his client mislead the court." *Id.* at 1367. While this conduct might well justify the imposition of sanctions, it alone does not justify the award of punitive damages. *See James v. Powell*, 19 N.Y.2d 249, 260–61, 225 N.E.2d 741, 747, 279 N.Y.S.2d 10, 19 (1967) (punitive damages not properly awarded where court levied them based on contempt citations in related proceedings rather than on account of the fraud at issue). We remand the issue of punitive damages for an award based solely on permissible grounds, namely, the deliberate and willful nature of the fraud and misrepresentation. On remand, sanctions may be considered; we note that the district court has already found that plaintiffs are entitled to attorneys' fees, to be assessed against defendants and their counsel, by virtue of defendants' attempts to mislead the court. 608 F.Supp. at 1368.

Judgment reversed as to damages and cause remanded in accordance with this opinion.