16-3413-cv (L)
Washington v. Kellwood Company

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of November, two thousand seventeen.

PRESENT:  JOHN M. WALKER, JR.,
REENA RAGGI,
PETER W. HALL,
*Circuit Judges*.

------------------------------------------------------------------------

DARYL K. WASHINGTON, SUNDAY PLAYERS, INC.,

*Plaintiffs-Appellants-Cross-Appellees*,

v.

Nos. 16-3413-cv
16-3664-cv

KELLWOOD COMPANY,

*Defendant-Appellee-Cross-Appellant.*

------------------------------------------------------------------------

APPEARING FOR APPELLANT:  DOUGLAS CAWLEY, McKool Smith, P.C., Dallas, Texas (Lauren Fornarotto, McKool Smith, P.C., New York, New York; Meredith Elkins, McKool Smith, P.C., Dallas, Texas; Aubrey "Nick" Pittman, The Pittman Law Firm, P.C., Dallas, Texas, *on the brief*).

APPEARING FOR APPELLEE:  JAMES M. HIRSCHHORN (Mark S. Olinsky, Kenneth R. Schachter, Katherine M. Lieb, *on the brief*), Sills Cummis & Gross, P.C., New York, New York.

1

Appeal from a judgment of the United States District Court for the Southern District of New York (Sarah Netburn, *Magistrate Judge*).[*]

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 30, 2016, is AFFIRMED.

Plaintiffs Daryl K. Washington and Sunday Players, Inc. (collectively, "SP") sued defendant Kellwood Company ("Kellwood") for breach of a November 2003 license agreement (the "License Agreement"), pursuant to which Kellwood became the exclusive manufacturer, licensee, and promoter of SP's athletic compression wear products. SP here appeals from the entry of a $1.00 judgment notwithstanding a jury award of $4.35 million and from the denial of a new trial on damages.[1] Kellwood cross-appeals from the liability judgment. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.  Kellwood's Liability Challenge

In challenging the liability judgment, Kellwood faults the district court's (1) evidentiary rulings, and (2) determination that Kellwood was not absolved of its

---

[*] The parties consented to proceed before a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c)(1).

[1] The district court initially granted SP a new trial on lost-business-value damages, but granted judgment notwithstanding the verdict when SP failed to proffer evidence that would establish such damages.

marketing obligations to SP by the License Agreement provision tying marketing outlays to total sales of SP products.[2]

a.      Evidentiary Rulings

Kellwood contends that the district court erred in (1) allowing a former SP marketing employee to give lay opinion testimony on the reasonableness of Kellwood's marketing efforts, and (2) excluding evidence of the profitability of Kellwood's performance-apparel division.  We review both rulings for abuse of discretion, *see United States v. Natal*, 849 F.3d 530, 534 (2d Cir. 2017); *United States ex rel. Feldman v. Van Gorp*, 697 F.3d 78, 93 (2d Cir. 2012), which is not evident here.

The brief lay opinion testimony of a former SP employee was "rationally based on [his] perception" from the time of his SP employment.  *See* Fed. R. Evid. 701(a).  In any event, such testimony was harmless given concessions from Kellwood's witnesses that no marketing efforts were conducted.  *See Bank of China, N.Y. Branch v. NBM LLC*, 359 F.3d 171, 183 (2d Cir. 2004) (holding that lay witness testimony arguably based on specialized knowledge reviewed only for harmless error).  No different conclusion is warranted because SP's counsel in summation referred to the witness as an "expert" in marketing because the district court promptly gave a curative instruction, which the jury is presumed to have followed.  *See, e.g.*, *United States v. Agrawal*, 726 F.3d 235, 258 (2d Cir. 2013).

---

[2] We need not address Kellwood's argument that the district court abused its discretion in excluding an Under Armour commercial, as the evidence was offered only as to damages, an issue on which we affirm the district court's nominal judgment in Kellwood's favor.

3

As for the exclusion of evidence that Kellwood's performance-apparel division was profitable, we identify no abuse of discretion because that evidence was proffered only to rebut the argument that Kellwood had attempted to purchase SP, which was of tangential relevance to the reasonableness of Kellwood's marketing efforts.

b.      Denial of Judgment as a Matter of Law

Kellwood argues that, as a matter of law, it had no marketing obligations to SP because the License Agreement limited its marketing expenditures based on SP's net sales, which were minimal.   We review a district court's denial of a Fed. R. Civ. P. 50(b) motion *de novo*, applying the "same standard as the district court," and granting judgment only if the evidence, "viewed in the light most favorable to the nonmoving party," demonstrates that judgment for the movant was the only conclusion that reasonable persons could have reached.   *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015).   Like the district court, we conclude that Kellwood was not entitled to judgment on that basis.

Under New York law, which the License Agreement identifies as controlling, exclusive license agreements generally require, whether expressly or impliedly, the licensee to use reasonable efforts to market the licensor's products. *See, e.g.*, *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 923–24 (2d Cir. 1977); *Zilg v. Prentice-Hall, Inc.*, 717 F.2d 671, 680–82 (2d Cir. 1983).   The License Agreement here is consistent with this requirement.   *See* App'x 2992 ("Licensee shall promote the Licensed Products and exploit this Agreement granted herein as provided in Schedule A, Item 10.").   No different conclusion is warranted by Schedule A, Item 10 of

4

the License Agreement, which states that Kellwood "shall expend an amount equal to three percent (3%) of Net Sales of the License[d] Products towards marketing." *Id.* 2999. That clause identifies the minimum marketing *expenditures* to which Kellwood was obligated, and says nothing of the *efforts* it was required to employ in promoting SP's products. Indeed, this Circuit has squarely rejected the proposition that "technical compliance" with such "spending and appointment requirements" satisfies the exclusive licensee's obligation to make "reasonable efforts" to promote the licensor's products. *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d at 923. As for the sufficiency of the liability evidence, we are satisfied upon our independent review of the record that the jury had a legally sufficient basis to conclude that Kellwood failed adequately to market SP's products.

Accordingly, we identify no error in the denial of Kellwood's motion for judgment as a matter of law on liability.

2.    SP's Damages Challenges

In challenging the district court's vacatur of the jury's $4.35 million damages award, SP disputes the exclusion at trial of methodologies employed by its damages expert. SP also faults the district court's denial of a new damages trial, and its award of $1 nominal damages.

a.    Exclusion of Damages Testimony

We review decisions to exclude an expert methodology only for abuse of discretion, *see In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016), and identify none here. The district court acted within its discretion in excluding the expert's

5

"market forecast" methodology as speculative, as it was premised only on the impressions of an MTV employee, and an MTV projection commissioned in anticipation of a potential commercial for SP.[3]  The same conclusion obtains as to SP's efforts to introduce the projections and surveys themselves.

Nor did the district court abuse its discretion in precluding the expert from testifying as to SP's lost business value as of January 2007, as the contract was breached in *2005*, and New York law requires that the value of an income-producing asset be calculated on the date of the breach.  *See Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 826 (2d Cir. 1990).

Finally, the district court did not abuse its discretion in precluding the expert from testifying about SP's expected profits through January 2010.  That theory—which presumed that (1) the contract would have been profitable, (2) Kellwood would not have breached it, and (3) the parties would have renewed it upon its January 2007 expiration—was both speculative and belied by the contract itself, which gave Kellwood the unilateral right to decide whether to renew.

b.  Motion for Judgment Notwithstanding the Jury Verdict

SP argues that the district court erred in granting judgment notwithstanding the jury's damages verdict on (1) SP's expectation of lost future profits, and (2) the lost value of SP's business at the time Kellwood broke off its exclusive manufacturing and marketing relationship with SP.  As already discussed, we review the district court's

---

[3] Magistrate Judge Dolinger identified this evidentiary concern and excluded the witness's testimony prior to the case being reassigned to Magistrate Judge Netburn.

decision on such a motion *de novo*, granting judgment only if there was but one verdict that the jury could reasonably have reached. *See Morse v. Fusto*, 804 F.3d at 546. Like the district court, we conclude that Kellwood was entitled to judgment as a matter of law on SP's damages claims.

### 1. Lost Future Profits

Under New York law, a plaintiff deprived of his entire stake in a business by a contractual breach may sue either for lost future profits or the lost value of his business on the date of breach. *See Schonfeld v. Hilliard*, 218 F.3d 164, 172, 175–76 (2d Cir. 2000). To prove lost profits, a plaintiff must demonstrate "both the existence and amount of such damages with reasonable certainty." *Id.* at 172. Although the damages "need not be proven with mathematical precision, they must be capable of measurement based upon known reliable factors without undue speculation." *Id.* (internal quotation marks omitted). "[E]vidence of lost profits from a new business venture receives greater scrutiny because there is no track record upon which to base an estimate." *Id.* A new venture whose profits are "purely hypothetical" and that would require "untested" sales to "hypothetical" consumers does not support a damages award. *Id.* at 173 (internal quotation marks omitted).

As the district court correctly observed, SP failed to proffer evidence from which lost profits could be established with reasonable certainty. The sole profits calculations presented to the jury were those of its expert, who testified that, had Kellwood reasonably marketed SP's products, SP's 2005–2007 revenues would have been 50% of those of the compression wear market leader, Under Armour, in 2002–2004. Under Armour was not

7

a reasonable comparator. At the time in question, Under Armour was an established business with annual sales between $49.5 million and $195 million. Indeed, by the end of 2002, it controlled approximately 80% of the market. By contrast, during the two-year comparison period, SP was a small start-up, producing a product similar to brand-name companies, but with no record of notable sales. Throughout its existence, SP sold less than $200,000 in merchandise to only a few small retailers and high school and college athletic teams. The expert's testimony that SP's revenues were reasonably certain to increase from a few hundred thousand dollars to approximately $80,000,000 in two years[4] was so unfounded that it failed to establish any legal basis for awarding lost-profits damages.

In urging otherwise, SP argues that its profits were made certain by Kellwood's manufacturing resources and MTV's expressed willingness to produce a television commercial. The argument fails because Kellwood's *capacity* to produce SP's compression wear speaks not at all to whether consumers would purchase its products over those of competitors. Further, undisputed trial evidence showed that MTV offered Kellwood a draft agreement to run an SP commercial, but only if Kellwood, *inter alia*, (1) paid a deposit, (2) agreed to pay MTV a 5–8% royalty on SP's future sales, and (3) demonstrated that more than $500,000 of SP's products could be sold. SP failed to show that it could meet this required sales threshold. Thus, assumptions that, but for Kellwood's breach, a commercial would have aired and consumers would have purchased millions of dollars in SP's products were "purely hypothetical." *Id.* at 172.

---

[4] Under the License Agreement, SP was entitled to a 5% royalty on sales of its products.

## 2. Lost Business Value Damages

Where lost future profits cannot be obtained, the "most accurate and immediate measure of damages" of a nascent business is its "market value . . . at the time of breach." *Id.* at 176. Such estimates are "inherently less speculative" than an estimation of future profits, as they may be measured by proof of "what a buyer is willing to pay for *the chance*" that the business will produce substantial income. *Id.* at 177 (emphasis in original). In proving such a claim, a plaintiff must nonetheless establish the value lost by the business with "reasonable certainty." *Id.*

As the district court correctly observed, SP's expert's $532,000 lost-business-value calculation fails with the $3.783 million lost-profits calculation, as both were premised on the same "yardstick" comparison to Under Armour's revenues. Nor could such damages be proved, as in *Schonfeld*, by reference to a "price at which the [business] would change hands between a willing buyer and a willing seller." *Id.* at 178 (internal quotation marks omitted). Although Washington himself testified that Kellwood had offered to purchase SP, no evidence was proffered to suggest the price at which the business might have changed hands at that time.

## 3. Nominal Damages

SP argues that it was entitled to present alternative damages evidence at a new trial, rather than to have judgment entered in a nominal amount. This is particularly so, it contends, because the jury's liability verdict established the fact of Kellwood's breach. *See, e.g.*, *id.* at 182 ("[P]ursuant to the wrongdoer rule, where . . . the existence of damage is certain, and the only uncertainty is as to its amount, . . . the burden of uncertainty as to

9

the amount of damage is upon the wrongdoer.") (internal quotation marks omitted); *see also Lexington Prods. Ltd. v. BD Commc'ns, Inc.*, 677 F.2d 251, 254 (2d Cir. 1982) ("Where the evidence shows such a clear and definite measure of damages, an award of nominal damages cannot stand."). We do not agree.

First, we have already concluded that SP failed to establish such damages as would satisfy New York law's requirement of reasonable certainty. Accordingly, because we affirm the district court's motion for judgment notwithstanding the verdict, we need not authorize any retrial. *Cf. Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000) ("[T]he authority of courts of appeals to direct the entry of judgment as a matter of law extends to cases in which, on excision of testimony erroneously admitted, there remains insufficient evidence to support the jury's verdict."); *accord Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). This is not a case, as in *Lexington Products*, where nominal damages were unwarranted, as SP had no sales history or contractual entitlements from which damages could reasonably be calculated. *See Lexington Prods. v. BD Commc'ns, Inc.*, 677 F.2d at 253–54.

Second, and in any event, SP failed to demonstrate an ability to proffer evidence of damages with reasonable certainty for use at any new trial. Given the opportunity to put forward such evidence, SP instead provided projections from Kellwood, MTV, and Washington about what SP's sales might have been, and of the value of other established and proven clothing brands, with values in the range of hundreds of millions of dollars. But we have already explained why such optimistic projections and valuations by reference to name-brand companies failed to establish damages with reasonable certainty.

10

The cases SP cites for the proposition that its principals could testify to expectations of future revenues are likewise inapposite, as they arose in the context of established companies. *Compare Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (deeming testimony regarding "flattening out" of profits permissible against backdrop of sales "over a period of years"), *and Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1174–77 (3d Cir. 1993) (deeming damages established with reasonable certainty based on testimony from company owner, where company had operational history, and performance had "surpassed" owner's projections in past years), *with Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862–65 (7th Cir. 2009) (explaining that it is a "difficult task . . . (1) to prove lost profits damages (2) in a complex market (3) from a product that has never been sold (4) without [valid] expert testimony"), *and US Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (rejecting testimony by company president where "record demonstrate[d] that [he] could not identify any customer interested in buying . . . a specific amount of [the product] at a specific price").

Accordingly, we conclude that the district court did not err in granting Kellwood judgment as a matter of law on SP's damages claims, and in entering a nominal-damages award of $1.00 in SP's favor.

3. <u>Conclusion</u>

We have considered the parties' other arguments and conclude that they are without merit. Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court